Chicago Land Clearance Commission, Petitioner, v. Chester Narodski, et al., Defendants. Parcel 3–15. Jackson Lien Co., Wacker Lien Co., Defendants-Appellants. Abe Sorkin, Milton S. Meden, Defendants-Appellees.

Gen. No. 49,468.

First District, First Division.

April 7, 1965.

Henry W. Kenoe and Raphael Fine, of Chicago, for appellants.

Maxfield Weisbrod, of Chicago, for appellees.

MR. JUSTICE ENGLISH delivered the opinion of the court.

This cause involves distribution of a condemnation award. The trial court ordered that $1,000 each be paid to a mortgagee and to a mechanic's lienor before payment of the balance to tax sale certificate holders. The latter have appealed on the theory that they are entitled to priority.

The facts are undisputed. Condemnation proceedings under the Eminent Domain Act (Ill Rev Stats 1961, c 47), begun early in 1962, resulted in a judgment on June 1, 1962 awarding $6,800 as full compensation for the taking of the property in question; on June 4, 1962 this amount was deposited with the County Treasurer; and on April 11, 1963 a petition for its distribution was filed.

Defendant Sorkin owned a purchase money first mortgage on the premises, made in 1959 for $13,700. At the time of the petition for distribution, the amount due thereunder was $14,345.45.

Defendant Meden held a mechanic's lien in the amount of $3,094.95 on which he had instituted foreclosure in 1960.

On May 29, 1961 defendant Jackson Lien Co. purchased the property for 1959 general taxes, paying $2,213.61 plus costs, and receiving a tax sale certificate. On April 2, 1962 defendant Wacker Lien Co. purchased the property for 1960 general taxes, paying

$2,449.98 plus costs, and also received a tax sale certificate. When the compensation award was deposited with the County Treasurer, there was due on these certificates $3,012.91 and $2,746.03, respectively. At that time the 1961 and 1962 general taxes ($2,469.28 and $270.06, respectively) were also due in a total amount of $2,739.34.

The court ordered the County Treasurer to distribute the award as follows:

(1) $2,739.34 to the County Treasurer;
(2) $1,000 to the mortgagee, Sorkin;
(3) $1,000 to the mechanic's lienor, Meden;
(4) the balance of the deposit ($2,060.66) to the holders of the tax sale certificates, Jackson Lien Co. and Wacker Lien Co., jointly.

By agreement of the parties, $2,739.34 was paid out of the fund to the County Treasurer in satisfaction of the 1961 and 1962 general taxes, leaving $4,060.66 on deposit with priority of distribution in dispute.

■■ The theory advanced in this court to support the order appealed from is that the intervention of condemnation prevented the holders of the tax sale certificates from obtaining tax deeds thereon, with the result that whatever rights or liens they may have had against the premises vanished into thin air.[1] We cannot agree, as it is our belief that the standing of the lienholders among themselves should remain unaffected by the condemnation judgment, only the res having been changed from the real estate to the award fund. The Supreme Court so held in City of Chicago v. Gage, 268 Ill 232, 239, 109 NE 28, where it said:

---

[1] No cases are cited to support this theory except those declaring the general principle that it is equitable "to apply the payment first to that debt for which the security is the most precarious." Wilhelm v. Schmidt, 84 Ill 183, 188 (1876); Chicago Title & Trust Co. v. McGlew, 90 Ill App 58, 61 (1899).

If the property is taken for public use the compensation money is deemed a substitute for the property, and a mortgagee or other lienholder has an equitable lien on the fund to the extent of his claim.

See also City of Chicago v. Salinger, 384 Ill 515, 519, 52 NE2d 184.

■ It is beyond dispute that the lien of general taxes enjoys superiority to all competing claims, including mortgage and mechanics' liens, even though the taxes may have been levied subsequent to the attachment of the other liens. People v. Etchison, 347 Ill 320, 325, 179 NE 884; Jader v. Costello, 405 Ill 181, 186, 89 NE2d 814. In effect, the parties in the instant case stipulated to this principle when they agreed that the 1961 and 1962 taxes should be paid first out of the condemnation award.

■ It also appears that the appellees would not contest the proposition that the grantees of a valid tax deed would hold their title free and clear of a prior mortgage or other encumbrance. McConnell v. Jones, 332 Ill 620, 164 NE 186; Murch v. Epley, 385 Ill 138, 145, 52 NE2d 125.

■ The only question remaining to be determined, therefore, is whether or not, under the circumstances of this case, the holders of the two tax sale certificates should be accorded the same preferential position which would have been theirs if tax deeds had been issued to them.[2] We believe they should be, in line with the thinking of this court expressed by way of dictum in Tubbs v. Dunlop, 325 Ill App 53, 59, 59 NE2d 514. As in that case, there is no express contention here that the tax sale certificates are invalid.

---

[2] Bearing in mind that tax deeds could not have been issued in this case because the two-year statutory period of redemption had not run when it was cut off by the condemnation judgment.

305

The master and chancellor in the Tubbs case (a suit for mortgage foreclosure) did not find that defendant's tax sale certificate was void, but merely held that, because of failure to comply with the notice provision of the statute, its lien had become subordinate to the lien of the mortgage. This court stated, however:

> The tax sale certificate being valid in all other respects, if the master had not found it void because of the failure to give the required notice, the chancellor would have been compelled to hold that the lien of defendant's tax sale certificate was superior and paramount to the lien of plaintiff's trust deed, since the law is well settled that a valid lien for unpaid general taxes is superior to a mortgage lien whether the tax lien attaches before or after the execution of the trust deed. (People v. Etchison, 347 Ill 320.)

Thus, the court in Tubbs was of the opinion that the preferential relationship between a tax sale certificate and a mortgage should be equated to the priority attaching to tax liens. We concur in this point of view and would reverse the order in the instant case on that ground alone if it were necessary to do so.

There is, however, another approach to the problem which is more readily available, and it leads to the same result. That is the route followed by this court in making its decision in the Tubbs case.

Section 270 of the Revenue Act (Ill Rev Stats, 1963, c 120, § 751) in pertinent part reads:

> No final judgment or decree of court in any case either at law or in equity or in proceedings under the Eminent Domain Act involving the title to or interest in any land in which such party holding such tax deed shall have an interest or setting

306

aside any tax deed procured under this Act shall be entered until the claimant shall make reimbursement to the party holding such tax deed and payments as herein provided in so far as it shall appear that the holder of such deed or his assignors shall have properly paid or be entitled to in procuring such deed.[3]

In the case at bar, as in the Tubbs case, the order of the trial court may logically be considered as having the legal effect of setting aside the tax sale certificates, in whole or in part. And this is nonetheless true, although it was not the declared intention of the party bringing either suit to do so, and each disavowed seeking such a result. We conclude, therefore, that, if the statute is to be followed, reimbursement must be made.[4]

 It has been mentioned that the language of the statute employs the term "tax deed" but does not use the term "tax sale certificate." In this regard we again accept the conclusion of the Tubbs decision in which this court said at page 61:

> While the statute refers only to tax deeds, in our opinion, it was intended to include tax sale certificates and to be equally applicable to same.

Another valid ground for reversing the order of the trial court is that the amounts designated for prior

---

[3] Eminent domain proceedings were added to this section by amendment in 1919 after it had been held that the statute in its earlier form did not require reimbursement to a tax title claimant out of a condemnation award. O'Connell v. Sanford, 255 Ill 49, 99 NE 74; error dismissed, Glos v. O'Connell, 34 Sup Ct 317.

[4] As pointed out in Tubbs (page 61), the statute was an enactment of the long-standing principle that a plaintiff would not be granted equitable relief (the setting aside of a tax deed or tax sale certificate) "unless he offered to do equity where equity and good conscience required it."

distribution to the mortgagee and to the mechanic's lienor bear no relation either to the value of those claims or to their alleged priority. Although this appears to have been a conscientious attempt to make an equitable division of the fund, we can find no legal basis for such a determination.

It is also argued by appellees that the condemnation fund is the only source of payment for their liens, whereas recovery of the amounts paid for the tax sale certificates could be had from the County Treasurer. As to the first part of this contention we agree, but, as to the suggestion contained in the latter part, we are furnished with no citations of authority and we are aware of none.

The order of the Superior Court is reversed and the cause remanded with directions to order distribution of the condemnation award in accordance with the views expressed in this opinion, and in so doing to give priority in payment to the holders of the tax sale certificates.

Reversed and remanded with directions.

McCORMICK, P. J. and DRUCKER, J., concur.