## In re OGDEN APARTMENT BLDG. CORPORATION.

### CHICAGO SECURITIES CORPORATION v. LAMBUR et al.

#### No. 6075.

Circuit Court of Appeals, Seventh Circuit.

June 22, 1937.

Vernon R. Loucks, of Chicago, Ill., for appellant.

Joseph Z. Willner, of Chicago, Ill., for Bondholders Protective Committee.

Deneen & Massena, of Chicago, Ill., for George E. Lambur.

Before EVANS, SPARKS, and MAJOR, Circuit Judges.

SPARKS, Circuit Judge.

This appeal challenges the validity of an order of the District Court in proceedings under section 77B of the Bankruptcy Act (11 U.S.C.A. § 207), classifying a claim based on a void tax deed on a parity with claims of first mortgage bondholders.

The tax deed was issued December 18, 1933, to one Lawton, upon surrender of a tax certificate issued to one Marhoefer upon his payment of $2,776.08, general taxes for the year 1928 on the premises owned by the debtor in these proceedings. Four days after the issuance of the deed, the Illinois Supreme Court handed down a decision in a review of a mandamus proceeding brought by Lawton against the County Clerk, holding that the former was not entitled to the deed, having failed to comply with the statutory requirements as to payment of taxes during the redemption period. Lawton v. Sweitzer, 354 Ill. 620, 188 N.E. 811. The reasons for the issuing of the deed while the mandamus proceeding was pending do not appear of record. Subsequently, the title was conveyed by quitclaim deed of Lawton to appellant.

December 18, 1934, an involuntary petition for the reorganization of the debtor under section 77B was filed. At that time there was pending in a state court an equity receivership instituted on October 10, 1931. On August 9, 1935, appellant served notice on all parties, of its intention to appear in the state court equity proceeding on the following day and request leave to institute a suit in ejectment on the basis of its tax title. Thereupon, the bondholders protective committee sought and obtained in the bankruptcy court an injunction against appellant to prevent it from proceeding with its ejectment suit. That court also referred the parties to a special master for a hearing on the validity of the tax deed

and the rights and interests of appellant therein.

In December 1935, appellant filed objections, as holder of the tax title, to all the proceedings, alleging that its title was superior and paramount to that of the debtor in the premises involved, and praying that the petition for reorganization be dismissed, and the restraining order dissolved, and leave given for it to join other necessary parties in its ejectment suit. Appellees thereupon filed amendments to their petition of August 15 in which they had prayed an injunction against appellant, asking the court for an order declaring appellant's deed void. March 12, 1936, the master filed his report to the effect that appellant's deed was void, and that, since appellant had rested its case upon the deed, and made no claim or proof as to the actual consideration paid for the deed, it was not a creditor of the debtor. Thereafter, appellant secured leave to file a claim instanter, having previously urged, in reply to a certain petition of the committee, that, in the event that its tax deed should be adjudicated invalid, it should be given leave to file its claim, with priority under section 64 of the Bankruptcy Act (as amended 11 U.S.C.A. § 104), and that no decree should be entered in the reorganization proceeding until it was reimbursed as holder of the tax title, in accordance with the provision of section 1, Laws 1909, p. 146, as amended, Revenue Act of Illinois (Smith-Hurd Ann.St. c. 120, § 411).

The claim, and the committee's objections to it, were referred to the master for further hearing. Testimony and exhibits were offered in support of the claim, and in his report, the master stated that he was "impressed with the fact that the claimant or its predecessor, did actually expend in payment of taxes the sum of $2,-776.08, which reduced the taxes on Debtor's property by that amount. Such payment was made on or about October 30, 1930. The Master, therefore, recommends that an order be entered * allowing the claim of (appellant) together with interest thereon at five per cent per annum from October 30, 1930, to December 18, 1934, the date of the filing of the petition in these proceedings, which principal and interest amounts to the sum of $3,347.49, as Claim in Class 3, said claim to be allowed on a parity with the Bondholders who constitute the other claimants in Class 3."

In accordance with this report, the District Court on September 29, 1936, entered an order reciting that the claimant had no lien upon the property or assets of the Debtor corporation which would entitle it to priority over the bondholders, and allowing the claim for $3,347.49, classified in class 3, on a parity with bondholders, and directing that the plan of reorganization be modified and amended to provide for the issuance of additional securities in satisfaction of the claim. No appeal was taken from this order. On October 6, the court entered a further order, from which this appeal is prosecuted, providing for a classification of all claims, in accordance with an order previously entered August 8, 1935. In Class I were placed obligations incurred in the prior receivership proceeding, and administrative expenses of the 77B proceeding as to which no claims had been filed at that time. In Class II were placed various claims based on the first mortgage bonds, and the claim of appellant. Four other classes were listed in which no claims had been filed.

Appellant assigns as error the action of the court in not allowing its claim in class one, in not finding appellant's lien as a first and prior one, in removing and eliminating appellant's claim and tax title without requiring its payment, and in adopting the order of August 8, 1935, in fixing the claims and priorities of the various parties which denied and found invalid appellant's lien and tax title without requiring reimbursement as provided by the law. Most of these errors as assigned seek to raise questions not determined by the order from which the appeal was taken. It is to be noted that the order of October 6 which was appealed from is merely a skeleton classification which contains no provision whatever as to the terms of payment of the various claims. We may notice only the facts that appellant is classified on a parity with the first mortgage bondholders; that there are second class claims aggregating $124,778, including appellant's for $3,347; that according to a statement elsewhere in the record, the estate of the debtor was insolvent, and its property valued at substantially less than the aggregate amount of the first mortgage indebtedness (appellee states in its brief that the permanent trustee valued it at not more than $50,000); and that taxes amounting to almost $15,000 exclusive of interest

and penalties were due on the property of the debtor. It follows from these facts that, being classified on a parity with the bondholders, appellant cannot hope to receive payment in full of its claim. Does it follow from this that the order of classification was erroneous?

The rights of the holder of a void tax deed are determined by section 224 of the Revenue Act of Illinois, as amended in 1919 and 1923. Smith-Hurd Ann.St. c. 120, § 210. The portions of this which are relevant to the case at bar are set out in the margin with the amended portions in italics.[1] Prior to the amendment, it had been held that the holder of an invalid tax title was only entitled to remburse-ment when his tax title was attacked and set aside in a proceeding brought for that purpose by the owner of the land. See City of Chicago v. Pick, 251 Ill. 594, 96 N. E. 539, and cases there cited.

█ While the language of the amendment is far from clear, and would perhaps appear to be intended to cover all cases where tax deeds were set aside, apparently the use of the word "claimant" limits the effect of the statute to the cases which arose as before, where the "claimant" prayed and obtained affirmative relief. There is this addition, that whereas it had been held in cases involving the distribution of the fund in eminent domain cases that the holders of invalid tax deeds were not entitled to share (see City of Chicago v. Collin, 302 Ill. 270, 134 N.E. 751), this amendment extended them the rights theretofore denied them. It seems clear that, had appellant pursued its remedy in the state court, as it attempted to do, by means of a suit in ejectment upon a ruling of the state court that the deed upon which it rested its case was invalid, there would have been no right to reimbursement under amended section 224, supra. See Schultz v. O'Connell, 239 Ill.

App. 312. Upon being enjoined from such a proceeding, upon appellees' petition, appellant in December 1935, asked the District Court to recognize its paramount title to the premises and dismiss the 77B proceedings. It was in defense to this petition, that appellees asked for a ruling on the validity of the tax deed. This was not an attempt on their part to obtain affirmative relief. It was a challenge to the validity of the instrument upon which appellant based its claim to affirmative relief. Appellant argues that the statute is a limitation upon the power of the Illinois courts to grant relief until reimbursement has first been made to the holder of the defective tax title, and that such statutory limitation is equally binding upon the federal court. The difficulty is that here the federal court is not *granting* relief, as it had been requested by appellant, but it is *denying* that relief, and the statute involved places no limitation upon the right of the court to deny relief to the holder of a defective tax deed.

█ Appellant relies upon an equitable right to reimbursement arising out of the fact that its payment of the taxes resulted in an actual saving to the estate since it prevented the accrual of penalties, and that since section 64a of the Bankruptcy Act [as amended, 11 U.S.C.A. § 104 (a)] directs the court to order the trustee to pay all taxes out of the assets of the estate, appellant should be subrogated to the priority of the State for its taxes. However, section 77B contains a provision to the effect that the priorities enumerated in section 64 are to be applied only in case of an order of liquidation. The only provision in section 77B as to priorities is as follows:

"For all purposes of this section unsecured claims which would have been entitled to priority over existing mortgages

[1] "Provided, that any judgment or decree of court, *in law or equity*, setting aside any tax deed procured under this Act, *or restoring the owner of same to possession*, shall provide that the claimant shall pay to the party holding such tax deed *the following, to be estimated by the county clerk*: All taxes and legal costs, as provided by law, *with interest at five per cent per annum, together with subsequent taxes and special assessments paid and the statutory fees and costs incurred.* * * * No final judgment or decree of court in any case either at law or in equity or in proceedings under the eminent domain Act involving the title to or interest in any land in which such party holding such tax deed shall have an interest or setting aside any tax deed procured under this Act shall be entered until the claimant shall make reimbursement to the party holding such tax deed and payments as herein provided in so far as it shall appear that the holder of such deed, or his assignors shall have properly paid or be entitled to in procuring such deed.*
(Italics indicate portions added or changed in 1919.)

if a receiver in equity of the property of the debtor had been appointed by a Federal court on the day of the approval of the petition or answer under this section, shall be entitled to such priority, and the holders of such claims, and of other claims, if any, of equal rank, shall be treated as a separate class of creditors."

If this were an equity receivership, would appellant be entitled to priority over the bondholders? We think this question must be answered in the negative. While the State has a lien on the property subject to its taxes for the payment of those taxes, the Illinois Supreme Court has held that such lien is discharged by a sale of the property for the taxes, and the purchaser who obtains a void deed has no property right in the land, either legal or equitable. City of Chicago v. Collin, 302 Ill. 270, 134 N.E. 751; O'Connell v. Sanford, 256 Ill. 62, 99 N.E. 885. Under these facts it seems clear that the State has not created a lien for the benefit of the holder of a void tax deed, and that the priority section of 77B, set out above, can afford him no relief.

In support of its claim of priority, appellant cites two cases, Dayton v. Stanard, 241 U.S. 588, 36 S.Ct. 695, 60 L.Ed. 1190, and In re Clark Realty Co. (C.C.A.) 253 F. 938. In the first, the Court held in a case arising in Colorado, that where a tax deed was invalidated solely on the ground that the sale had been had after the property came into the custody of the court, the holders of the tax certificates were entitled to priority of payment because of the requirement of section 64 that the trustee pay the taxes in advance of the payment of dividends to creditors. The second case, decided by this court, held in a Wisconsin proceeding that the holders of tax certificates which had not proceeded to sale, were entitled to the same priority, also upon a consideration of section 64. We think these cases present very different facts from those at bar where the holder of the tax certificates surrendered them for a deed, void for failure to comply with the statutory requirements for the issuance of a tax deed, and where, under the statute involved, the holder of a void deed obtained no rights unless he was called upon to reconvey to the owner of the property (section 411 of chapter 120, Smith-Hurd Ill.Stats., Revenue Act) or unless his deed was set aside at the instigation of such owner (section 224 [Smith-Hurd Ill.Stats.

c. 120, § 210]). Other cases cited by it, decided by the Illinois court, required reimbursement because affirmative action was taken by the owner or mortgagee against the holder of the invalid deed, and are in accord with principles already referred to by us.

Since appellant was not entitled to priority over the holders of first mortgage bonds of the debtor, there was no error in the order of the District Court in classifying its claim on a parity with those bondholders with their consent. Appellant cannot object to this classification rather than a separate classification since if it were allowed the latter, it would be in subordination to the bondholders, and in view of the status of the property, and the relative amount of liabilities and assets, subordination of its claim would render its consent to the plan unnecessary under the terms of the first proviso of section 77B (e), Bankr.Act (11 U.S.C.A. § 207 (e) and the ruling In re 620 Church Street Bldg. Corp., 299 U.S. 24, 57 S.Ct. 88, 81 L. Ed. ——. The order of the District Court is, therefore,

Affirmed.